O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order Granting Defendants' Motion to Transfer Venue

     Pending before the Court is Defendants' Motion to Transfer Venue.  The Court finds the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  After considering the moving papers, the Court GRANTS Defendants' motion.

     I.     Background

     Okorie Ezieme ("Ezieme") and NGOK Global Consultants, Inc. ("NGOK") (collectively, "Plaintiffs") sued Ward International Trading, Inc. ("Ward"), Kent Osborne ("Osborne"), Sherri Swing, Brent Osborne, and Stephen Moon (collectively, "Defendants") for breach of contract and fraud.

     Ward is a Utah corporation engaged in the business of importing goods from foreign countries.  Ezieme is the principal of NGOK, a California corporation.  In 2004, Osborne, the President of Ward, met Ezieme when Ezieme was auditing the financial books of one of Kent Osborne's companies.  Ezieme represented to Osborne that he was an experienced accountant and financial analyst with access to private and institutional sources of money, and the two discussed the possibility of a joint venture.  Osborne delivered Ward's financial statements to Ezieme for his review.  In addition, Osborne represented to Ezieme that Ward had valuable inventories, located in Utah and Georgia.

     On August 12, 2004, Ezieme and Osborne entered into an agreement.  According to the agreement, Ezieme was named the Chief Financial Officer ("CFO") of Ward with full access and control over Ward's finances, and in return Ezieme made a short-term $200,000 investment in

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

Ward, with a lump-sum $250,000 repayment due at a later date. Ezieme drafted this agreement on Ward letterhead, presumably in California, and Osborne signed it on August 12, 2004, with Ezieme signing on August 16, 2004, also presumably in California.[1]

On August 18, 2004, Ezieme invested the required $200,000 in Ward. Between December 2004 and April 2005, Ezieme purchased over $533,000 worth of merchandise from vendors on behalf of Ward. During this time, Ezieme traveled between California and Utah on a monthly basis, and he purchased goods from at least two vendors in Utah, including Parker International, Inc. ("Parker"), a Utah Corporation. During this transaction, Ezieme allegedly negotiated $86,000 worth of discounts for the goods, but he billed Ward for the full amount. Furthermore, while acting as its Chief Financial Officer, Ezieme allegedly misrepresented Ward's financial statements to potential investors. When Osborne discovered these misrepresentations, he instructed Ezieme not to make any further withdrawals from Ward's account. However, Ezieme proceeded to deposit $95,746.60 of Ward's funds into NGOK's account. Ezieme claims that the agreement authorized him to borrow funds from Ward to purchase goods for Ward. After subsequent disputes between Ezieme and Ward, Ezieme was terminated on June 16, 2005. After being terminated, Ezieme traveled to Utah to meet with Osborne on several occasions to try to resolve their differences. Ward repaid Ezieme $136,000 over the course of seven months, but stopped the payments when Ward discovered Ezieme's unauthorized $95,746.60 withdrawal.

On October 14, 2008, Plaintiffs filed the instant action in this Court. In the complaint, Plaintiffs assert the following causes of action: (1) breach of contract, (2) breach of employment contract, (3) unpaid wages, (4) breach of implied covenant of good faith and fair dealing, (5) open book account, (6) fraud, (7) negligent misrepresentation, and (8) concealment. Defendants seek a transfer of venue to the District of Utah, where the majority of material witnesses are located.

II.     Legal Standard

---

[1] The agreement was likely last signed by Ezieme in California on August 16, 2004. Ezieme drafted the letter on behalf of Osborne, on Ward letterhead, and addressed the letter to Ezieme's address in California. *See K. Osborne Dec.* ¶ 5. The letter is dated August 12, 2004, and signed by Osborne. Ezieme's signature follows a declaration that the agreement is accepted by him, followed by the date August 16, 2004. *See id.*, Ex. A.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

      Under 28 U.S.C. § 1404(a), a district court has the discretion to transfer a civil action to any other district in which the action could have been filed "[f]or the convenience of parties, witnesses and in the interest of justice." As the Ninth Circuit explained in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000), the court should weigh multiple factors in addition to the convenience of witnesses and the interests of justice, including the following factors derived from the *forum non conveniens* context:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. In addition to these eight factors, the Ninth Circuit also considers the presence of a forum selection clause and the relevant public policy of the forum state as significant factors. *See id.* at 499 (noting that the plaintiff's choice of California as the forum was consistent with "California's strong public policy to provide a protective local forum for local franchisees"). Other courts also consider the relative congestion of the transferor and transferee court dockets. *See, e.g.*, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

      The burden is on the moving party to show that transfer is appropriate. *See Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal. 2005). Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988); *see also Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S. Ct. 544, 99 L. Ed. 789 (1955) (noting that Congress intended that district courts have discretion to transfer upon a lesser showing of inconvenience than that required for *forum non conveniens*). Despite this wide latitude, a defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

III.    <u>Discussion</u>

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

On July 16, 2009, Defendants filed a motion to transfer venue to the District of Utah under 28 U.S.C. § 1404(a) and a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction as to Brent Osborne.[2]  Plaintiffs failed to file an opposition brief or a notice of non-opposition by the July 3, 2009 deadline.  *See* L.R. 7-9.  This Court has the discretion to construe Plaintiffs' failure to file an opposition as consent to the granting of the motion to transfer.  *See* L.R. 7-12.  However, this Court chooses to address the merits of Defendants' motion based upon the existing record.

Pursuant to 28 U.S.C. § 1404(a), Defendants move to transfer venue to the District of Utah.  Defendants argue that the case should be transferred because the vast majority of material witnesses reside in Utah, the dispute will be governed by Utah law, and the District of Utah docket is significantly less congested than that of the Central District of California.

  A.  <u>Propriety of Venue in the District of Utah</u>

The Court begins its analysis by first determining whether this action "might have been brought" in the potential transferee court, the District of Utah.  *See* 28 U.S.C. § 1404(a); *see also Hoffman v. Blaski*, 363 U.S. 335, 343-44, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960); *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 414 (9th Cir. 1985).  The transferee court must have had personal jurisdiction over defendants, subject matter jurisdiction over the claim, and proper venue had the claim originally been brought in that court.  *See Hoffman,* 363 U.S. at 343-44.

In this case, the District of Utah would have been a proper court to adjudicate Plaintiffs' claims.  First, the District of Utah would have had personal jurisdiction over Defendants because Ward is incorporated in Utah and the other defendants reside in the state.  *See K. Osborne Decl.* (submitted in support of motion to transfer) *¶¶* 20–23; *Compl. ¶¶* 3-6.  Second, the District of Utah would have had subject matter jurisdiction over Plaintiffs' claims based upon diversity jurisdiction—Plaintiffs are citizens of California while Defendants are all citizens of Utah.  *See* 28 U.S.C. § 1332.  Finally, the District of Utah would have had proper venue because all Defendants reside in Utah.  *See* 28 U.S.C. 1391(b).  For these reasons, the Court finds that

---

[2] The motion to dismiss for lack of personal jurisdiction as to Brent Osborne was granted because Plaintiff failed to file an opposition to the motion.  *See* L.R. 7-9; L.R. 7-12.  The instant motion to transfer venue only pertains to the remaining Defendants Ward International Trading, Inc., Kent Osborne, Sherri Swing, and Stephen Moon.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

Defendants have met their burden of demonstrating that the action might have been brought in the District of Utah.

    B.    <u>An Individualized Determination of Convenience and Fairness</u>

Once the Court determines that an action "might have been brought" in the potential transferee court, the Court must make an "individualized, case-by-case determination of convenience and fairness," accounting for the factors articulated in *Jones*. *See Jones,* 211 F.3d at 498.

    1.    <u>Convenience of Witnesses</u>

The Court first considers the convenience of the witnesses, which courts often recognize as the most important factor in ruling on a motion to transfer under 28 U.S.C. § 1404(a). *See State Street Capital Corp. v. Dente,* 855 F. Supp. 192, 197 (S.D. Tex. 1994). The court must not only consider the number and location of witnesses on each side, but also the importance of the witnesses to the case. *See id.* at 198; *see also Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335-36 (9th Cir. 1984) (analyzing this factor in the *forum non conveniens* context). Thus, the court must engage in a quantitative and qualitative analysis to determine whether the forum is convenient for witnesses.

In order to determine which forum is more convenient for the witnesses, courts often separate party witnesses and employees from non-party witnesses. *See Gundle Lining Construction Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) ("It is the convenience of non-party witnesses, rather than that of employee witnesses . . . that is the more important factor and is accorded greater weight."); *see also* 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.13(1)(f)(iii) (3d ed. 2009) ("[M]any cases distinguish between party witnesses (and those closely aligned with a party, such as employees) . . . and non-party witnesses. . . ."). The convenience of non-party witnesses generally takes precedence over the convenience of party witnesses. *See Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.,* 734 F. Supp. 54, 57 (N.D. N.Y. 1990) (internal citation omitted) ("While the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor."). For the sake of clarity, this Court chooses to distinguish between non-party witnesses and party witnesses.

    a.    <u>Non-Party Witnesses</u>

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

  Defendants intend to call three non-party witnesses, each of whom resides in Utah, as well as one non-party witness from California. *See K. Osborne Decl.* ¶ 25. Zac Evans and Darren Parker are principals of Parker, a Utah-based vendor of Ward International. Defendants intend to call Zac Evans and Darren Parker to testify about purchases made by Plaintiffs on behalf of Ward, including $86,000 worth of discounts Ezieme allegedly negotiated for the goods. *See id.* ¶ 25. Defendants also intend to call Bryce Smith, who represents another Utah vendor, with whom Plaintiff contacted on behalf of Ward. *See id.* ¶ 25. In addition to these three non-party witnesses from Utah, Defendants also intend to call Major Gurjeet S. Pahwa, a financial associate of Ezieme and a resident of California. *See id.* ¶ 26. Thus, of the known non-party witnesses for the Defendants, three of the four are located in the state of Utah.

  Because Plaintiffs failed to file an opposition to Defendants' motion, the record is unclear about the non-party witnesses that Plaintiffs intend to call. However, it is likely that the majority of non-party witnesses will be located in the state of Utah. Plaintiffs purchased goods on behalf of Ward from at least two Utah-based vendors. The record does not indicate whether they purchased goods from other vendors located in California. Therefore, quantitatively, the majority of non-party witnesses are likely located in Utah. Qualitatively, each witness is material to either to Plaintiffs' claims for breach of contract and fraud and to Defendants' intended counterclaim. Presumably, it would be more burdensome on the three Utah-based witnesses if the action was litigated in California rather than in Utah. If the case is transferred, only one non-party witness would have to travel to a foreign court, and the Plaintiffs have not indicated that any other non-party witnesses would be burdened by transfer. *See Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000) (Olson, J.) (noting that Plaintiff identified five witnesses who would have to travel from Hawaii to New York if the case was transferred).

  Therefore, this Court finds that the locations of the three material, non-party witnesses in Utah favors transfer to the District of Utah.

    b.  <u>Party Witnesses</u>

  The record does not specify which parties intend to testify as witnesses in this case. The five Defendants are all located in Utah, while the two plaintiffs are located in California. Ward is a Utah Corporation, and Kent Osborne, Sherri Swing, Brent Osborne, and Stephen Moon are all residents of Utah. *See K. Osborne Decl.* ¶¶ 20–23. Defendants intend to call the following employees of Ward, each of whom also resides in Utah: Brent Osborne from the Sales Department, Brad Osborne from the Operations Department, Blake Osborne from the Sales

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

Department, and Travis Kinnersley from the Purchasing Department. *See id.* ¶ 23. In addition to these party and employee witnesses, Defendants intend to call Ward's accountants[3] to testify about Ezieme's employment as Chief Financial Officer at Ward and his investments in the company. *See id.* ¶ 24. The accountants are Brett Bagley, Dennis Gum, and Jerry Hosler, and they all reside in the state of Utah. Therefore, including the testimony of Osborne, Ward's president, Defendants intend to call a total of eight party witnesses located in Utah. All of these witnesses are material to Plaintiffs' claims and Defendants' intended counterclaim.[4]

      This Court is cognizant of the burdens to Defendants' party witnesses, notwithstanding the fact that they are employees of a corporation. *See Miracle*, 87 F. Supp. 2d at 1073-74 (noting that the defendant "is a large corporation that could more easily travel to Hawaii to litigate than could [the p]laintiff travel to New York"). The record does not indicate the relative size of Ward–its assets, number of shareholders, and annual revenue–and Plaintiffs' fraud claim suggests that Ward is less well-off than Osborne represented during negotiations. *See Compl.* ¶ 13. Thus, Ward cannot be classified as a "large corporation" capable of absorbing significant costs of litigation. Furthermore, the record indicates that four of the five defendants are "individuals with limited means," *Mot.* 6: 20-21, that "[r]equiring any of [the] parties or witnesses to travel over six hundred and fifty miles to appear in this matter would be inconvenient, burdensome and costly," *Mot.* 8: 8-10, and that Defendants "do not have the means or the ability to travel back and forth between Utah and California," *Mot.* 10: 6-7. Therefore, Defendants' party witnesses would be significantly burdened by having to litigate this case in California.

---

      [3] The record is unclear whether the accountants were employees of Ward or employees of an independent accounting firm hired by Ward. *See K. Osborne Decl.* ¶ 23 (referring to the accountant witnesses as "WARD'S accountants"). It is possible that these accountants are not employees of Ward because Osborne hired outside auditors, including Ezieme in 2004, to review the records of one of his other companies. *See id.* ¶ 3. If the accountants are employees of an independent accounting firm, they may be considered non-party witnesses–their residence in Utah favoring transfer to an even greater extent. Nevertheless, this Court will assume the accountants are employees of Ward and, thus, party witnesses.

      [4] It is unclear what each party witness will testify about, or whether their proposed testimony would be duplicative. Based upon their respective positions in the company and the claims at issue, their testimony would certainly be relevant.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

Because Plaintiffs did not file an opposition to this motion, it is unclear how many party witnesses they intend to call who are located in California. NGOK is incorporated in California, and Ezieme resides in California. *See Compl.* ¶¶ 1-2. In addition to Ezieme, the record does not indicate the number of employees at NGOK. *See id.* ¶ 13. Thus, it is unclear how many party witnesses Plaintiffs would intend to, or would be able to, call who are residents of California.

Due to the locations of at least eight party witnesses in the state of Utah, this Court finds that this factor favors Defendants' motion to transfer to the District of Utah.

> 2. The Location Where the Relevant Agreements Were Negotiated and Executed

> > a. Location of Negotiations

The record is unclear about the location of pre-agreement negotiations. Eziene first met Osborne in 2004, when he was auditing the records of one of Osborne's companies. Because Osborne is a resident of Utah and one of his companies, Ward, is incorporated in Utah, it is likely that this meeting took place in Utah. However, beyond this initial meeting, the record does not suggest where further negotiations occurred.

> > b. Location of Execution

With regard to the execution of the agreement, the record does not specify where the contract was formed. According to prevailing conflict of laws principles, a contract is formed in the "place where the last act occurred necessary to give the contract binding effect under the forum's rules of offer and acceptance." *S.E.C. v. Elmas Trading Corp.*, No. 94-1447, 1988 WL 141091, at *1 (9th Cir. Dec. 8, 1988); *see also Hardy v. Musicraft Records*, 93 Cal. App. 2d 698 (1949) (holding that the contract was executed in California when plaintiff's signed and mailed their acceptance in California). In the instant case, it appears that Ezieme was the last party to sign the agreement and that he signed in California. *See K. Osborne Decl.* Ex. A. According to the record, Ezieme drafted the agreement on Ward letterhead, and Osborne signed the letter. However, it is unclear whether Ezieme signed the agreement before sending it to Osborne–essentially post-dating Ezieme's signature–or if he signed after receiving the letter from Osborne. It will be assumed that Ezieme signed the letter after Osborne on August 16, 2004. Thus, it is likely that the contract was executed in California.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

Despite the strong likelihood that the contract was executed in the Plaintiff's chosen forum, the contract does not specify that performance was to occur in California. Indeed, the only two transactions on record occurred in Utah and on behalf of a Utah Corporation, Ward.

Nevertheless, this factor weighs against granting the motion to transfer venue because the agreement was signed in California.

### 3. The State That Is Most Familiar with the Governing Law

In determining whether to transfer a case, the Ninth Circuit has directed courts to consider the state that is most familiar with the governing law. *Jones*, 211 F.3d at 498. In diversity cases, the transferee court must apply the state law of the transferor court. *See Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (noting that a "change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms"). In *Van Dusen*, the Court held that the plaintiffs would not be prejudiced by the § 1404(a) change of venue because the transferee court would be required to apply the law of the forum the plaintiffs initially selected. *See id.* at 821.

In the instant action, the record does not clearly indicate whether California law would govern Plaintiffs' causes of action, as many of the Plaintiffs' claims may have accrued in Utah. Defendants argue that the contract was formed in Utah and was to be performed in Utah. However, as discussed previously, the last act giving the contract binding effect–Ezieme's signature–likely occurred in California. Furthermore, the contract does not specify that performance was to occur in Utah. However, even if the contract was executed in California, the District of Utah would apply California contract law to resolve Plaintiffs' claims for breach of contract, breach of employment contract, unpaid wages, and breach of the implied covenant of good faith and fair dealing. There is no evidence that a district court in the District of Utah would be unable to fairly and efficiently apply California law where applicable.

Additionally, some courts consider the court's familiarity with the facts and history of the case in evaluating this factor. *See, e.g.*, *DIRECT TV, Inc. V. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1083 (C.D. Cal. 2002) (Pregerson, J.) (denying transfer because "[t]his Court has already invested time and resources with this case, having issued both a Temporary Restraining Order and a Preliminary Injunction after extensive briefing on the merits"). This Court has not invested sufficient time or resources that would make transfer wasteful or inefficient. Nevertheless, a district court in Utah will be required to apply California law, and a California court is presumably more familiar with California law.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

Therefore, this Court's familiarity with California law weighs slightly against granting Defendants' motion to transfer venue, though there is no evidence that Plaintiffs would be prejudiced by a district court in Utah applying relevant California law.

    4.  Plaintiff's Choice of Forum

Ordinarily, "great weight" is accorded to plaintiff's choice of forum. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987) (citation omitted). However, in judging the weight to be accorded to a plaintiff's choice of forum, a court must consider the extent of both the plaintiff's and the defendant's contacts with the forum, including those relating to the plaintiff's cause of action. *See id.* (citation omitted) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").

    a.  The Parties' Contacts with the Forum

Defendants do not have significant contacts with the forum state. Ward is a Utah corporation with its principal place of business in Utah, and it is unclear whether it has conducted any business in the state of California, beyond the contract with Ezieme. With regard to the individual defendants Kent Osborne, Sherri Swing, and Stephen Moon, they are all residents of the state of Utah, and the record does not specify whether they have any personal contacts with California.

With regard to Brent Osborne, Defendants have filed a 12(b)(2) Motion to Dismiss for lack of personal jurisdiction because, they argue, Brent Osborne lacks sufficient minimum contacts with California. *See Mot.* 3: 14-16. Brent Osborne was a passive shareholder in Ward until 2005, and he traveled to California on one occasion to meet with prospective investors on behalf of Ward. *See B. Osborne Decl.* (submitted with motion to dismiss for lack of personal jurisdiction) ¶ 2. Brent Osborne has never engaged in any personal business in California, has no bank accounts or other property in California, and traveled to California for personal reasons on only three occasions–two times to accompany his wife for her visits with a medical professional and once for a short vacation. *See id.* ¶ 2. Therefore, Defendants contacts with the forum are minimal.

Ezieme, on the other hand, is a resident of California and is the principal of NGOK, a California corporation. While Plaintiffs have significant ties to California, the absence of sufficient minimum contacts between Defendants and the forum favors transfer.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

        b.      The Contacts Relating to Plaintiffs' Cause of Action

      The record does not reflect a sufficient nexus between Plaintiffs' cause of action and the forum state. Although the agreement between Ward and Ezieme was likely executed in California, the agreement was with Ward, a Utah corporation with its principal place of business in Utah, concerning Ezieme's employment with and $200,000 investment in the company. *See K. Osborne Decl.* ¶ 6. Ezieme first discussed the possibility of a joint venture with Osborne while he was auditing Osborne's records, likely in Utah. *See id.* ¶ 3. Osborne's alleged misrepresentation about Ward's inventories–the foundation of Ezieme's fraud claim–concerned goods that were stored in Utah and Georgia. *See Compl.* ¶ 13. Pursuant to the contract, Plaintiffs purchased goods for Ward from at least two vendors in Utah, and Ezieme traveled to Utah at least once a month in performance of his contractual duties. *See K. Osborne Decl.* ¶¶ 8, 13. Therefore, the contract at the center of this dispute chiefly concerned Ezieme's employment-related duties and investments in Utah.

      Although most of the operative facts occurred outside the state of California, some events relating to the agreement were admittedly related to the forum. Osborne delivered financial records to Ezieme, *see id.* ¶ 4, and Ezieme was the last party to sign the agreement, *see id.* Ex. A. Though the record is unclear, it is assumed that these events occurred in California. Furthermore, the agreement contained an arbitration clause requiring that all claims arising from the agreement be settled in accordance with the rules of the American Arbitration Association of the State of California. *See id.* On balance, however, these occurrences and the arbitration clause do not amount to sufficient contacts because the purpose and effect of the contract was directed toward Ezieme's employment and investments in Utah.

      Therefore, this Court affords little deference to Plaintiffs' choice of forum because the operative facts occurred outside the state of California. Despite the fact that Plaintiffs chose to file suit in the Central District of California, this factor weighs slightly in favor of transferring this case to the District of Utah.

        5.      The Respective Parties' Contacts with the Forum, and the Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

      The Ninth Circuit has also directed courts to consider the respective parties' contacts with the forum, and the contacts relating to the Plaintiff's cause of action in the chosen forum. *Jones*, 211 F.3d at 498. As discussed previously, any connection this case has with California is attenuated at best. The only nexus between Plaintiffs' claims and California are the delivery of

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

financial records to Ezieme, Ezieme's signing of the contract, and the arbitration clause. Other than these three facts, this case involves Ezieme's employment with a Utah corporation, his investments in that corporation, and his employment activities in Utah.

Based upon the few isolated contacts between Defendants and California, this Court finds that this factor weighs in favor of transferring this case to the District of Utah.

      6.    <u>The Differences in the Costs of Litigation in the Two Forums</u>

The Court fails to see how litigating this case in Utah will significantly increase litigation costs. Upon the transfer of this case, Ezieme will be required to travel to Utah to litigate his claims against Defendants. However, it does not appear that this increase in expense would be unduly burdensome. Ezieme frequently traveled to Utah during his employment with Ward, and he traveled to Utah to meet with Osborne on several occasions after being terminated to try to resolve their differences. *See K. Osborne Decl.* ¶ 14. Indeed, Ezieme is currently litigating claims in the District of Utah against Parker, one of the Utah vendors involved in the instant action. *See id.* ¶ 25. Thus, transferring Ezieme's case to the District of Utah would not impose an unreasonable financial burden because he is financially capable of traveling to Utah to litigate this case.

Additionally, most of the evidence relevant to his claims are located in Utah. As noted above, the vast majority of known material witnesses reside in Utah. Thus, witness costs will presumably decrease if this action is litigated in the District of Utah. Finally, the relevant documents are located in Utah, including Ward's accounting, employment, and investment records and the transactional records concerning Ezieme's purchases from Utah vendors. *See id.* ¶ 27. Defendants note that they are unaware of any documents relating to this case located in California, aside from those located on Ezieme's company computer and those that he has refused to return to Ward after his termination. *See id.* ¶ 28.

Therefore, this factor favors granting Defendants' motion to transfer venue.

      7.    <u>The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses</u>

Courts also consider "the availability of compulsory process to compel attendance of unwilling non-party witnesses." *Jones,* 211 F.3d at 498-99. Three of the four non-party witnesses that Defendant intends to call are located in Utah.. If any of these non-party

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

witnesses are unwilling to testify in California, this Court would need to rely on its subpoena power. However, with rare exception, the Court's subpoena power only extends outside of this district if the place of service is "within 100 miles of the place specified for the deposition, hearing, trial, production or inspection." Fed. R. Civ. P. 45(b)(2). Thus, if the action remains in California, there is an increased chance that certain material non-party witnesses may be outside the Court's subpoena power. However, if this action is transferred to the District of Utah, this problem is significantly minimized because only one of the non-party witnesses would be beyond the court's subpoena power. Nevertheless, the record does not indicate whether any of the non-party witnesses would be unwilling to testify in either forum.

Because transfer would bring more material non-party witnesses within a court's subpoena power, this factor weighs slightly in favor of transferring the case to Utah.

### 8. The Ease of Access to Sources of Proof

The last factor articulated by the Ninth Circuit in *Jones* is the ease of access to sources of proof. As noted above, most material witnesses and documents are located in Utah. Even if it is assumed that Ezieme is in possession of certain relevant documents located in California, those documents should be accessible with relative ease. Thus, this factor weighs in favor of transfer.

### 9. Relative Docket Congestion

When evaluating a motion to transfer under § 1404(a), some courts consider the relative degrees of court congestion between the transferor court's docket to that of the transferee court. *See, e.g.*, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *Parrish v. Nat'l Football League Players, Inc.*, No. 07-00943, 2007 WL 1624601, at *8 (N.D. Cal. June 4, 2007) (Aslup, J.); *Linear Tech. Corp. v. Analog Devices, Inc.*, No. 94-3988, 1995 WL 225672, at *3 (N.D. Cal. Mar. 10, 1995) (Brazil, J.). Defendants argue that the relative congestion of the courts' dockets favors transfer to the District of Utah. In 2008, there were 578 weighted filings per judge in the Central District of California. *See* http://www.uscourts.gov/cgi-bin/cmsd2008.pl. In comparison, there were 466 weighted filings per judge in the District of Utah. *See id.* Given the larger number of weighted filings, the Central District of California has a larger number of cases that are three years old or older than does the District of Utah. *See id.* (demonstrating that 8.1% of cases in the Central District are over three years old, as compared to 7.3% of cases in Utah).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6748 PSG (JWJx) | Date | August 31, 2009 |
|---|---|---|---|
| Title | Okorie Ezieme, *et al.* v. Ward International Trading, Inc., *et al.* | | |

Some courts also consider the length of time between filing and trial, though this data can vary between courts in the same district. *See, e.g.*, *Parrish*, 2007 WL 1624601, at *8 (Aslup, J.) (noting that the "undersigned's own practice, however, is to bring civil cases to trial within 12 to 14 months of the first appearance" despite the fact that median time to trial in the Northern District of California at the time of the motion was 27.5 months); *Linear Tech.*, 1995 WL 225672, at *3 (finding that more recent statistics indicated that the forum had a faster median time to trial than the proposed transferee court). Nevertheless, Defendants concede that the median time to trial figures for the Central District of California and the District of Utah are "substantially the same." *Mot.* 10: 15.

Due to the greater number of filings and pending cases in the Central District of California, this factor weighs in favor of transferring venue to the District of Utah.

        10.    Conclusion

As discussed, the following factors weigh slightly in favor of the plaintiff: the location of agreement and the court's familiarity with the governing law. However, the remaining factors favor transfer, particularly the aggregate convenience to material non-party and party witnesses. In summary, based upon, *inter alia*, the location of the parties, the location of the witnesses identified in the record and the importance of their testimony, and other factors such as the administrative difficulties resulting from court congestion, the Court concludes that Defendants have met their burden of demonstrating that a transfer is warranted "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

IV.    Conclusion

Based on the foregoing, the Court GRANTS Defendants' motion to transfer, and this case is, therefore, TRANSFERRED to the United States District Court for the District of Utah. The Clerk shall close the file and notify the Clerk of Court in that district.

**IT IS SO ORDERED.**